UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KESHUNA ABCUMBY,

Plaintiff, Case No.

vs. Hon.

MICHIGAN DEPARTMENT OF CORRECTIONS, HEIDI WASHINGTON, Director Michigan Department of Corrections, STEVEN ADAMSON, Special Activities Coordinator Michigan Department of Corrections, JEREMY HOWARD, acting Warden Women's Huron Valley Correctional Facility, ANNETTE TELLAS, Chaplain at the Women's Huron Valley Correctional Facility, sued in their individual and official capacities, jointly and severally,

Defendants.
_____________________________________________/

Law Offices Jeffrey S. Burg, PLC
Jeffrey S. Burg (P38381)
Attorney for Plaintiff
29551 Greenfield, Suite 101
Southfield, MI 48076
Telephone: (248) 227-5027
Fax: 248-856-1258
Jburg@comcast.net

**COMPLAINT**
**JURY TRIAL REQUESTED**

## INTRODUCTION

NOW COMES Plaintiff, by her counsel, Law Offices Jeffrey S. Burg, PLC, by Jeffrey S. Burg, and brings this action against the above-named Defendants for damages for past conduct and for declaratory and injunctive relief to enjoin all Defendants from future implementation of the Photograph Policy requiring the removal of all religious wear, for the substantial burden it places on religious practice that is directly prohibited by the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C.§ 2000cc et seq., and also prohibited by the United States Constitution and the Michigan Constitution, which violations were committed by all Defendants when (a) Plaintiff was forcefully required to remove her religious headwear to take a mug shot creating a permanent public image of her without her religious head wear, (b) Plaintiff was required to carry an identification card with the subject image and present it to male staff and guards and others while in custody, and (c) the subject photograph was placed on a public website accessible to male and female members of the general public.

## JURISDICTION AND VENUE

1. The instant action arises under the RLUIPA, 42 U.S.C. § 2000cc et seq., the First Amendment of the United States Constitution, and the Michigan Constitution, Const. 1963, Art. I, § 4, and 42 U.S.C. § 1983.

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331.
3. This Court has personal jurisdiction as the events giving rise to this action which occurred in the Eastern District of Michigan.
4. This Court has jurisdiction over Plaintiffs' claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.
5. This action is also brought under 42 U.S.C. §1983 seeking injunctive and declaratory relief together with monetary damages against Defendants for violations of Plaintiff's rights under the First Amendment of the United States Constitution and the Michigan Constitution.
6. This Court has personal jurisdiction over the Defendants named herein as public officials of the State of Michigan sued in their official and individual capacities for violations of Plaintiff's statutory and constitutional rights.
7. Venue is proper pursuant to 28 U.S.C. §1391 as to Defendants because Defendants conduct business in this judicial district, and this is the district where a substantial part of the events or omissions giving rise to the claims occurred.

**PARTIES**

8. Plaintiff is a citizen of the United States and at all relevant times was imprisoned at the Women's Huron Valley Correctional Facility under the jurisdiction of the Michigan Department of Corrections (MDOC).

9. Defendant Heidi Washington was and is the Director of MDOC. Her duties and responsibilities included a responsibility for developing and implementing policies and procedures for the operation and management of the MDOC and its employees. Washington was also responsible for the care, custody and protection of prisoners under the jurisdiction of MDOC. The policies, practices, actions, and omissions of requiring a prisoner's "hijab" to be removed when photographs are taken are centrally promulgated, disseminated, and enforced from the headquarters of Defendant Washington. At all times relevant, Ms. Washington was acting under color of state law. Ms. Washington is sued in her individual and official capacities.

10. Defendant Steven Adamson, Special Activities Coordinator of MDOC, is sued in his individual and official capacities. At all times relevant, he was acting under color of state law.

11. Defendant Jeremy Howard, Acting Warden at the Women's Huron Valley Correctional Facility, is sued in his individual and official capacity. At all times relevant, he was acting under color of state law.

12. Defendant Annette Tellas, Chaplain at the Women's Huron Valley Correctional Facility, is sued in her individual and official capacity. At all times relevant, she was acting under color of state law.

**13.** Defendant Shawn Brewer was the Warden of Huron Valley, and is sued in his individual and official capacity. At all times relevant, he was acting under color of state law.

## STATEMENT OF GENERAL FACTS

14. Plaintiff repeats and realleges all preceding paragraphs as though fully stated herein.

15. This case is about the MDOC Photograph Policy pattern and practice that is implemented by Defendants which violates the First Amendment as well as other federal and state law. Pursuant to this policy, Defendants force prisoners who wear religious head coverings to remove those head coverings for a photograph, even where doing so violates the prisoner's sincerely-held religious beliefs. This practice alienates and oppresses faith communities throughout the State of Michigan.

The Hijab

16. Plaintiff wears a hijab pursuant to her Muslim faith. For the purposes of discussing the Defendants' policy, the term "hijab" is used throughout this complaint to refer to a garment worn by many Muslim women in various parts of the world; it is a headscarf that covers the wearer's hair, ears, and/or neck, and frequently part of her chest, but leaves her entire face exposed. In Arabic, the word "hijab" derives from the word "hajaba," sometimes translated as to hide or

screen from view or to cover. Wearing a hijab is also known as "covering." Plaintiff does not wear a niqab, or a face veil.

17. For many observant Muslim women, the practice of covering entails wearing one's hijab at all times, whether at home or in public, when the wearer is in the presence of men who are not part of her immediate family ("mahram").

18. While women choose to wear the hijab for an array of reasons, many believe that the hijab fulfills the commandments of modesty and devotion that stem from, among other things, the Qu'ran, the primary holy book of the Muslim faith, and the hadith, the oral traditions carried down from the age of the Prophet Mohammed. Plaintiff and other women who cover frequently view wearing the hijab as a mandatory aspect of Muslim identity and faith.

19. Plaintiff wears the hijab because her their faith dictates that no man outside of a woman's mahram should see her uncovered hair or head. Plaintiff presently wears hijab every single day and believes that her religious faith requires her to do so. Plaintiff has covered regularly for years. Plaintiff's hijab is core to her identity, and it is an essential part of who she is.

20. Being forced to remove one's hijab in public, particularly in the presence of men who do not belong to the wearer's mahram, is a profound defilement of the wearer's sincerely-held religious beliefs and a violation of her religious practice.

Requiring a Muslim woman to remove her hijab in public is akin to demanding that a secular person strip naked in front of strangers.

The Defendants' Unlawful Photograph Policy

21. On May 16, 2011, the Defendant MDOC implemented the Prisoner Photographic Identification Policy to establish protocols for taking photographs of prisoners for their prison profile.

22. Defendant MDOC Prisoner Photographic Identification Policy 04.04.133(B) directive states, when a prisoner is taking their intake processing photo that "… headgear shall not be worn."

23. Defendant MDOC's policy unreasonably requires the explicit and unconditional removal of headgear regardless of an individual's sincerely-held religious belief.

24. Defendant Washington, in her role as director of the MDOC is primarily responsible for the adoption, implementation and enforcement of MDOC's policies throughout all MDOC facilities including the Huron Valley Women's Correctional Facility.

25. Defendants Howard and Brewer, were responsible as warden for the adoption, implementation and enforcement of MDOC's policies at the Huron Valley Women's Correction Facility.

26. Prisoner photographs are integrated into other law enforcement databases. Due to this practice, the integration increases the likelihood that images of prisoners

without their religious head coverings will be viewed by many people long after the prisoner photograph is taken.

**Federal, State, and Local Governments Across the United States Recognize the Religious Interest in the Hijab and Permit it to be Worn in Official Photographs**

27. Defendant MDOC's Photograph Policy contravenes national norms and practices. From the federal to the local level, government and law enforcement entities recognize the significant constitutional and statutory interests at play and permit those in custody to wear religious head coverings for the purpose of official photographs.

28. The United States Department of State permits those who wear hats or head coverings for religious reasons to keep those coverings on in official passport photographs. The Department of State website allows those being photographed to wear a religious hat or head covering if they "submit a signed statement that verifies that the hat or head covering in [the person's] photograph is part of recognized, traditional religious attire that is customarily or required to be worn continuously in public. [1]

1. [1] See http://www.nydailynews.com/new-york/nyc-crime/nypd-ripped-abusing-facial-recognition-tool-article-1.3847796.

29. Similarly, the United States Citizenship and Immigration Services ("USCIS") issued a policy memorandum on July 23, 2012 that permits religious head coverings to be worn in photographs. The memorandum states that "USCIS will accommodate an individual who wears headwear as part of their religious practices."[2] Should a head covering cast a shadow over the wearer's face or otherwise obscure part of their face, USCIS will "ask individual to remove or adjust portions of religious headwear that covers all or part of individual's face." In this situation, USCIS will offer the wearer a private room or screened area in which to adjust their head covering as well as a photographer of their gender. The religious head covering in question "is allowed to cover the ears if USCIS can still identify the individual."

30. The Michigan Vehicle Code, Sections 28.292 and 257.310 also permits an applicant for a driver's license to keep her hijab on while having her official driver's license photograph taken; as long as it does not touch the person's eyebrows.

31. The Dearborn Heights, Michigan, Police Department changed its booking procedures in July 2015 after a woman was forced to remove her hijab in the presence of men during the booking photograph and while in custody. The Police

---

2. Available at https://ru.usembassy.gov/u-s-citizen-services/passports/photos/.

Department implemented reform after that woman filed suit alleging violations of her religious rights. According to the updated policy, Muslim women are not required to remove religious head coverings like hijabs for any booking photographs. At least one additional lawsuit has been settled under the new policy, which recognizes the substantial religious interests of women who wear hijabs.

32. In a lawsuit against the City of Dearborn Heights, the 6th Circuit upheld the policy because of the clear privacy and religious right of the Muslim women has in religious practice. The 6th Circuit found that the releasing the booking photograph of a Muslim woman without her hijab would be a clear unwarranted invasion of the woman's privacy. The booking photograph without religious head covering would not be made available to the public because it would violate the establishment clause of the First Amendment.

33. Law enforcement officials across the country have likewise recognized the right of citizens to wear hijabs or other religious head coverings while being photographed for official government purposes.

34. In Long Beach, California, the City Council approved a July 2017 settlement between a woman required to remove her hijab for a post-arrest photograph and the Long Beach Police Department that amended the Department's official policy so as to accommodate persons who wear religious head coverings. The

Department is no longer permitted to forcibly remove the hijabs of female prisoners at any point while they are in custody.

35. In amending its policy, Long Beach joined two neighboring jurisdictions, San Bernardino County and Orange County, which adopted policies protecting detainees who wear religious head coverings following lawsuits that settled in 2008 and 2013 respectively.

36. In Hennepin County, Minnesota — the county that includes Minneapolis — the Sheriff's Office implemented a new policy for inmates at the Hennepin County Jail and those in custody throughout Hennepin County in March 2014. The policy permits female prisoners to keep their hijabs on while a booking photograph is taken and provides that the hijab can be pushed back slightly off of the wearer's face if necessary. Inmates at the County Jail are permitted to wear hijabs while incarcerated.

37. In Portland, Maine, Cumberland County Sheriff Kevin Joyce publicly apologized after releasing the booking photographs of two Muslim women who had been arrested at a Black Lives Matter protest. The photographs showed each woman without her hijab; Joyce offered his "sincerest apologies…to the Muslim community for the appearance that we are disrespecting their religious beliefs

and practices." [3] The Cumberland County Jail procedures require a woman to remove her hijab only in private, without men present, and provide that two booking photographs will be taken, one with the woman's hijab and another without.

38. Each of these examples reflects a growing national consensus that there is no basis to require the removal of religious head coverings for official government photographs.

39. Even the New York Police Department has recognized the harm its Photograph Policy may cause Muslim women. Three Muslim women reached a settlement with the City on February 26, 2018, pursuant to which the City agreed to pay $180,000 in damages for the forced removal of the women's hijabs pursuant to the Photograph Policy. [4] Upon information and belief, however, the Photograph Policy remains in place despite this settlement. Even if a Muslim woman is able to have her Booking Photograph taken in private by another woman at One Police Plaza, the Booking Photograph itself remains in the NYPD's database indefinitely — available to all who access the computer system or the woman's paper file.

---

3. [3] Available at https://www.pressherald.com/2016/09/14/sheriffs-office-apologizes-for-improperly-releasing-photos-of-muslim-protesters.
4. [4] Available at https://www.nytimes.com/2018/02/28/nyregion/muslim-hijab-nypd.html.

## The Michigan Department of Correction's Unlawful Photograph Policy Forces Muslim Women to Violate Their Religion

40. Federal legislation has been enacted to demonstrate our robust national commitment to the free exercise of religion and to prohibit the government from placing a substantial burden on religious beliefs. This legislation, which reflects an increased awareness of and support for religious interest in practices like covering, "shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by … the Constitution." 42 U.S.C. § 2000cc-3(g). The statute even "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." Id. § 2000cc-3(c).

41. In contravention of this legislation and the tolerant, inclusive policies it embodies, the Defendants' Photograph Policy pattern and practice has had an extensive and corrosive effect on Muslim-American women in its custody who wear religious head coverings and are housed in Defendant's facility.

42. Moreover, the Photograph Policy is a profound manifestation of insensitivity towards religious practices and interests. In today's post-9/11 climate, there is widespread hostility towards and baseless fear of Muslim-Americans. In the context of this increasingly polarized setting, it is incumbent on these Defendants to increase awareness of and sensitivity towards the Muslim-American

community by setting an example in their practices. The Photograph Policy pattern and practice has precisely the opposite effect.

43. The Defendants' Photograph Policy pattern and practice substantially impacts the citizens of its facility. The Photograph Policy custom is to force Muslim-women to forcibly remove their hijabs for the Booking Photograph while in custody and that the Photograph Policy pattern and practice had violated their constitutional and statutory rights.

**Plaintiff Abcumby is Subjected to the Defendants' Photograph Policy**

44. Plaintiff was forced to remove her hijab against her will and religion, pursuant to the Photograph Policy pattern and practice.

45. At multiple instances, Plaintiff made her dissent and protest to the forceful removal of her hijab extremely clear. Plaintiff asserted her right to keep her hijab on for the photograph because it is representative of a sincerely-held religious belief, as a Muslim-woman.

46. Defendants' officers refused to accommodate Plaintiff's reasonable request.

47. As a direct consequence of Defendants' coercion, Plaintiff complied and removed her head piece.

48. When Plaintiff's hijab was forcefully removed, it was in the presence of one or more males in and around the booking area.

49. Entity Defendant disseminated Plaintiff's Booking Photograph to male members of the public.

50. Like many Muslim women whose religious beliefs dictate that they wear a hijab, Plaintiff felt exposed and violated without hers. It is as if Plaintiff was naked in a public space.

51. Plaintiff endured insurmountable amount of humiliation and trauma as a direct result of the Entity Defendant's pattern and practice. This policy is unnecessarily discriminatory and the existence of Plaintiff's booking photograph and the fact that it can be viewed again and again by men who are not members of her immediate family is haunting.

52. As a result of Defendants' acts and omission in failing to safeguard Plaintiff and all female prisoners, Plaintiff has experienced harassment, humiliation, embarrassment, psychological trauma, and fear.

53. As a direct result of Defendants' policy, Plaintiff has suffered anxiety attacks, nightmare, night sweats, nausea, vomiting, abnormal menstrual cycles, headaches, high blood pressure, and psychological and mental distress.

54. Plaintiff filed proper grievances regarding this policy. All grievance levels were denied.

55. Plaintiff exhausted her administrative remedies and now brings this action for relief.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

## The Religious Land Use and Institutionalized Persons Act

## (42 U.S.C. § 2000cc)

56. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

57. The RLUIPA provides, in relevant part, the following: "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that the imposition of the burden that person- (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a)(1)-(2).

58. Plaintiff is a "person" as defined under the RLUIPA. See 42 U.S.C. § 2000cc-1(a) and 42 U.S.C. § 1997(3).

59. Plaintiff's decision to wear hijabs constitute a sincerely-held religious belief.

60. At all relevant times, Defendants met the definition of "government" under RLUIPA. See 42 U.S.C. § 2000cc-5(4)(A)(i)-(iii).

61. At all relevant times, the locations where Defendants take Booking Photographs, including, but not limited to, the Women's Huron Valley Correctional Facility, where the events alleged in this complaint transpired, are federally-funded "institutions" as defined under the RLUIPA and the Civil Rights of Institutionalized Persons Act of 1980 ("CRIPA"), 42 U.S.C. § 1997(1)(B)(ii)-(iii).

62. At all relevant times, Plaintiff was "residing in or confined to institutions" as defined under the RLUIPA when the events alleged above transpired.

63. Defendant MDOC's acts or omissions, policies, and customs substantially burdened Plaintiff's religious exercise by requiring her to remove her hijab to be photographed while she was residing in or confined to Women's Huron Valley Correctional Facility.

64. Defendant MDOCs acts or omissions, policies, and customs do not further a compelling government interest.

65. Defendant MDOC's acts or omissions, polices, and customs are not the least-restrictive means of furthering a compelling government interest.

66. As a direct proximate result of Defendant MDOC's wrongful acts and omissions, Plaintiff has sustained damages, and have suffered and continue to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

**SECOND CAUSE OF ACTION**

**Free Exercise Clause**

**(42 U.S.C. § 1983)**

67. . Plaintiff repeats and alleges the above paragraphs as if the same were fully set forth at length herein.

68. 42 U.S.C. § 1983 prohibits any person acting under color of state law, custom, or usage to deprive a citizen of rights secured by the Constitution.

69. At all relevant times, all named Defendants acted under color of state law.

70. Under the First Amendment to the Constitution of the United States of America, Plaintiff has the right to freely exercise their religion.

71. By forcing Plaintiff to remove her hijab for the Booking Photograph, Defendant MDOC deprived Plaintiff of her right to freely exercise her religion in contravention of the Free Exercise Clause.

72. As a direct and proximate result of all named Defendants unlawful discriminatory conduct, Plaintiff has sustained damages, and has suffered and continue to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

## THIRD CAUSE OF ACTOIN
## Michigan State Constitution
## (Article 1, Section 4)

73. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

74. Article 1, Section 4 of the Constitution of the State of Michigan provides that: "Every person shall be at liberty to worship God according to the dictates of his own conscience."

75. Defendant MDOC's policy requiring that arrestees who wear religious head coverings remove those head coverings to be photographed violates Article 1, Section 4 by disallowing the free exercise of religion.

76. As a direct and proximate result of Defendant MDOC's unlawful conduct, Plaintiff has sustained damages and continues to suffer mental anguish, physical and emotional distress, humiliation, and embarrassment.

## DAMAGES

**77.** Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth herein.

**78.** The acts, omissions and policies of Defendants constituting violations of Plaintiff's constitutional, statutory and common law rights were and are a proximate cause of Plaintiff's damages.

**79.** As a result of Defendants' acts, omissions and policies, the Plaintiff has suffered severe emotional and psychological injuries, and physical injuries and damages.

**80.** The physical and emotional injuries inflicted upon Plaintiff were willful, wanton, cruel and the result of intentional or deliberately indifferent conduct entitling Plaintiff to punitive damages.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

a. Assert jurisdiction over this action;

b. Declare unconstitutional the photograph policy described above;

c. Provide adequate medical and mental health treatment to remediate the ongoing harm to the Plaintiff;

d. Award damages to Plaintiff for harm caused by Defendants' unconstitutional policies, unconstitutional acts and violations of law, including punitive damages where appropriate;

e. Award reasonable costs and expenses incurred in the prosecution of this action, including reasonable attorneys' fees and costs; and

f. Grant such other and further declaratory and equitable relief as the Court deems appropriate, just and proper to protect Plaintiffs from further harm.

Respectfully submitted,

**LAW OFFICES JEFFREY S. BURG, PLC**

/s/ *Jeffrey S. Burg*__________
Jeffrey S. Burg P38381
29551 Greenfield, Suite 101
Southfield, MI 48076
248-227-5027
jburg@comcast.net

Dated: May 31, 2024

**DEMAND FOR JURY TRIAL**

Plaintiff, by and through her counsel, hereby demands a trial by jury.

**LAW OFFICES JEFFREY S. BURG, PLC**

/s/ *Jeffrey S. Burg*___________
Jeffrey S. Burg P38381
29551 Greenfield, Suite 101
Southfield, MI 48076
248-227-5027
jburg@comcast.net

Dated: May 31, 2024