UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KESHUNA ABCUMBY,

                    Plaintiff,                    Civil Action No. 24-11445

v.                                               Judith E. Levy
                                                 United States District Judge

MICHIGAN DEPARTMENT                              David R. Grand
OF CORRECTIONS, *et al*.,                        United States Magistrate Judge

                    Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS (ECF No. 16)

On May 31, 2024, plaintiff Keshuna Abcumby ("Abcumby"), who is incarcerated at the Women's Huron Valley Correctional Facility ("WHV"), filed suit against five defendants: the Michigan Department of Corrections ("MDOC"); MDOC Director Heidi Washington; WHV Acting Warden Jeremy Howard; WHV Chaplain Annette Tellas; and Special Activities Coordinator Steven Adamson (collectively, "Defendants").  (ECF No. 1).[1]  In her complaint, which challenges certain aspects of an old MDOC prisoner photograph identification policy, Abcumby alleges three causes of action: violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc; violation of the Free Exercise Clause of the First Amendment; and violation of Article I, Section 4 of the Michigan Constitution.  (*Id.*, PageID.16-18).  She seeks declaratory,

---

[1] On November 22, 2024, this case was referred to the undersigned for all pretrial purposes pursuant to 28 U.S.C. § 636(b).  (ECF No. 22).

injunctive, and monetary relief.  (*Id.*, PageID.19-21).

On November 20, 2024, Defendants filed a Motion to Dismiss.  (ECF No. 16).
Abcumby filed a response on December 31, 2024 (ECF No. 28), and on January 17, 2025,
Defendants filed a reply brief (ECF No. 29).   Oral argument was held on Defendants'
motion on April 2, 2025.  At the close of oral argument, the Court gave the parties the
opportunity to file supplemental briefs, which they did.  (ECF Nos. 32, 33).

## I.      RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion
to Dismiss **(ECF No. 16)** be **GRANTED IN PART** and **DENIED IN PART**.  Specifically,
Defendants' motion should be **GRANTED** as to (1) all of Abcumby's claims against
Defendants Tellas and Adamson; (2) Abcumby's RLUIPA claim for money damages; and
(3) Abcumby's claim under the Michigan Constitution.  Defendants' motion should be
**DENIED** as to all aspects of Abcumby's First Amendment claim against Defendants
Washington and Howard, as well as Abcumby's claim for certain prospective injunctive
relief against Defendants Washington, Howard, and the MDOC under both RLUIPA and
the First Amendment.

## II.     REPORT

### A.      Factual Background

In her complaint, Abcumby alleges that she is a female of Muslim faith, who wears
a hijab for religious reasons.  (ECF No. 1, PageID.5).  She asserts that a hijab is a garment
worn by many Muslim women in various parts of the world; it is a headscarf that covers
the wearer's hair, ears, and/or neck, and frequently part of her chest, but leaves her entire

2

face exposed.  (*Id.*).  Abcumby wears the hijab because her faith dictates that no man outside of her immediate family should see her uncovered hair or head.  (*Id.*, PageID.6). She further alleges that, for Muslim women, being forced to remove one's hijab in public, particularly in the presence of men outside the wearer's immediate family, "is a profound defilement of the wearer's sincerely-held religious beliefs and a violation of her religious practice."  (*Id.*).

Abcumby premises each of her claims on former MDOC Policy Directive ("PD") 04.04.133(B), effective as of May 16, 2011 (the "2011 Policy"), which required prisoners' photographs for identification purposes to be taken without any head coverings.  (*Id.*, PageID.7).  She alleges that, pursuant to the 2011 Policy: (1) she "was forced to remove her hijab against her will and religion" and in the presence of men, despite making "her dissent and protest to the forceful removal of her hijab extremely clear;" (2) she was forced to carry an identification card with the subject image and present it to male staff and guards while in custody; and (3) her booking photograph – which was taken without her hijab – was "disseminated" to male members of the public.  (*Id.*, PageID.2, 14-15).

Defendants assert that the MDOC replaced the 2011 Policy with a new one that became effective on November 29, 2021 (the "2021 Policy") – a fact Abcumby does not dispute.  (ECF No. 29-1).  Since then, prisoners have been able to wear a religious head covering for the photograph that the public can view and for their prison "identification card photo."  (*Id.*, PageID.205).  The MDOC takes a second, confidential photo in a private area that can only be viewed by designated staff and is exempt from Michigan's Freedom of Information Act ("FOIA").  (*Id.*).  Moreover, the revised policy provides that, "[i]f

removal of the head covering in a non-private area would violate the individual's religious beliefs, the confidential photo shall be taken by a member of the same sex …." (*Id.*). Thus, to the extent female prisoners have religious objections to having their photographs taken without head coverings by a male, or having photos without their religious head coverings displayed on a prison identification card or disseminated to the public, it is undisputed that, as of November 29, 2021, the MDOC no longer required them to do so.

### B.    Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

4

In deciding whether a plaintiff has set forth a "plausible" claim, a reviewing court must accept the factual allegations in the complaint as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "On a motion to dismiss, the court is limited to the allegations in the plaintiff's complaint, the exhibits attached to the complaint, public records, and documents in the record to which the complaint refers." *Brown v. City of Albion, Mich.*, 136 F.4th 331, 341 (6th Cir. 2025) (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

C.    **Analysis**

In their motion to dismiss, Defendants advance several arguments as to why Abcumby's complaint fails to state a claim upon which relief may be granted. Beginning with the simplest, each argument is addressed below.

1.    *Claims Against Defendants Tellas and Adamson*

In their motion, Defendants argue that dismissal is appropriate as to Chaplain Tellas and Special Activities Coordinator Adamson because Abcumby failed to (1) sufficiently allege their personal involvement in any alleged violation of her rights; and (2) timely serve

5

them.  (ECF No. 16, PageID.99-103).  In her response brief, Abcumby did not even attempt to rebut either of these arguments.  And, at oral argument, Abcumby conceded that dismissal was appropriate as to these two individuals.  Thus, Defendants' motion to dismiss Abcumby's claims against Defendants Tellas and Adamson should be granted.

### 2.   *Claims Against Defendant MDOC*

Defendants also argue that Abcumby's claims against the MDOC should be dismissed because they are barred by Eleventh Amendment immunity.  (*Id.*, PageID.86-87).  The Eleventh Amendment bars civil rights actions against a State and its agencies and departments unless the State has waived its immunity and consented to suit or Congress expressly abrogated immunity.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).  Eleventh Amendment immunity "bars all suits, whether for injunctive, declaratory or monetary relief, against a state and its departments …."  *McCormick v. Miami Univ.*, 693 F.3d 654, 661-62 (6th Cir. 2012) (internal quotation marks omitted).  "The state of Michigan, however, has not consented to being sued in civil rights actions in the federal courts," *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004), and Congress did not abrogate state sovereign immunity when it passed § 1983, *Chaz Constr., LLC v. Codell*, 137 F. App'x 735, 743 (6th Cir. 2005).  The same applies to a plaintiff's RLUIPA claim against the State.  *See Ali v. Simmons*, No. 1:19-cv-126, 2019 WL 2314686, at *3 (W.D. Mich. May 31, 2019) ("The MDOC therefore is immune from suit under the RLUIPA …."), *aff'd*, No. 21-1829, 2023 WL 4085758 (6th Cir. Apr. 4, 2023).

In her response brief, Abcumby specifically conceded that Eleventh Amendment absolute immunity bars her claims against the MDOC.  (ECF No. 28, PageID.176).

6

Abcumby's counsel confirmed this at oral argument.  Thus, Defendants' motion to dismiss Abcumby's claims against the MDOC should be granted.[2]

### 3. RLUIPA Claim – Money Damages

Defendants also argue that Abcumby cannot obtain monetary damages under RLUIPA.  (ECF No. 16, PageID.102).  In her response brief, Abcumby conceded that this is the case.  (ECF No. 28, PageID.183).  Abcumby's counsel confirmed this at oral argument, and the Court agrees.  *See Ali v. Adamson*, 132 F.4th 924, 930 (6th Cir. 2025) (citing *Haight v. Thompson*, 763 F.3d 554, 568 (6th Cir. 2014)).  Thus, Abcumby's claim for money damages under RLUIPA should be dismissed.

### 4. Claims for Declaratory and Injunctive Relief

Defendants next argue that this Court lacks subject-matter jurisdiction over Abcumby's request for declaratory and injunctive relief because that request is "moot." (ECF No. 16, PageID.87-90).  While both sides address the issue as framed by Defendants, because it is undisputed that the MDOC's challenged policies were amended effective November 29, 2021 (ECF No. 29-1), two-and-half years before Abcumby commenced this

---

[2] In her response brief, Abcumby also conceded that Eleventh Amendment immunity bars her claims against the individual defendants in their official capacities.  (ECF No. 28, PageID.176).  However, she continues to seek prospective injunctive relief, apparently from those same defendants in their official capacities, which is permissible.  *See Ali*, 2019 WL 2314686, at *3 (holding that although the MDOC is "immune from suit under the RLUIPA, [] Plaintiff may seek declaratory and [prospective] injunctive relief against the state by way of an official-capacity suit against MDOC officials, under the doctrine of *Ex Parte Young*, 209 U.S. 123, 159-60 (1908) (Eleventh Amendment immunity does not bar individual from pursuing declaratory and injunctive relief by way of an official-capacity claim against a state official).").  As discussed below, *see infra* at 12-15, the Court finds that at least one aspect of Abcumby's request for prospective injunctive relief remains in controversy.  Thus, other than the extent to which Abcumby will be permitted to seek prospective injunctive relief, her official capacity claims against Defendants Washington and Howard should be dismissed.

action, Defendants' argument is more one of standing than mootness.   Specifically,

Defendants argue:

> Per the current version of PD 04.04.133, from November 29, 2021
> forward, Abcumby may wear a head covering in her photograph that
> is viewable by the public.   Additionally, under [the 2021 Policy],
> Abcumby can request to be photographed by a female officer in a
> private area.   Finally, MDOC will take a confidential photograph
> without the head covering that can only be viewed by designated staff
> and is exempt from FOIA.   The change to MDOC 04.04.133 secures
> all the relief that Abcumby seeks in her complaint regarding
> declaratory and injunctive relief.

(ECF No. 16, PageID.88).

Thus, the gist of Defendants' argument is that even before Abcumby filed her

complaint in this case she had no need for any declaratory or injunctive relief.   As the

Honorable Gershwin A. Drain of this Court recently explained, that is a "standing" issue,

not a "mootness" issue:

> Under Article III of the U.S. Constitution, federal courts are given
> jurisdiction only over "cases" and "controversies."   The doctrine of
> standing developed "to ensure that federal courts do not exceed their
> authority as it has been traditionally understood" under Article III.
> There are three requirements that need to be met, at minimum, in order
> for a plaintiff to have standing to be heard in federal court: (1) the
> plaintiff must have an injury in fact, (2) there must be a causal
> connection between the injury and the conduct complained of, and (3)
> it must be likely that the injury is redressable by a favorable court
> decision.   These standing requirements are "an essential and
> unchanging part of the case-or-controversy requirements of Article
> III."
>
> The doctrine of mootness is "similar" to standing, "but they are not
> the same."   While standing ensures that a plaintiff has a personal stake
> in the outcome of litigation at the outset, mootness "is akin to saying
> that, although an actual case or controversy once existed, changed
> circumstances have intervened to destroy standing."   In other words,
> if a plaintiff had standing at the beginning of litigation but loses

standing during the litigation, it is more appropriate to say the case is moot.  Regardless, just as standing is required for a federal court to have jurisdiction over a case, the absence of mootness is also required.

*Owens v. Schuette*, No. 24-10787, 2024 WL 4469086, at *4 (E.D. Mich. Oct. 10, 2024).

*See also Sumpter v. Wayne Cty.*, 868 F.3d 473, 490 (6th Cir. 2017) ("[S]tanding applies at the sound of the starting gun, and mootness picks up the baton from there."); *Cleveland Branch, N.A.A.C.P. v. City of Parma, Ohio*, 263 F.3d 513, 526 n.11 (6th Cir. 2001) ("[S]tanding concerns only whether a plaintiff has a viable claim that a defendant's unlawful conduct 'was occurring *at the time the complaint was filed*,' while mootness addresses whether that plaintiff continues to have an interest in the outcome of the litigation.") (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000) (internal citation omitted, emphasis added)).

In a recent Western District of Michigan case, *Hague v. Kent Cty.*, No. 1:24-cv-9, 2024 WL 4116459, at *4 (W.D. Mich. Sept. 9, 2024), that considered the legality of a Kent County inmate photograph policy similar to the one at issue here, the Honorable Hala Y. Jarbou recognized the distinction between the inmate's "standing" to challenge the policy, and the potential "mootness" of her request for injunctive relief.  In *Hague*, Judge Jarbou explained that the defendants did "not expressly argue or demonstrate that they changed the policy and deleted [the inmate's] photograph from their databases *before* Hague filed her complaint.  Instead, they contend that Kent County changed its policy 'around the same time that Plaintiff filed her suit' and that '[e]ven if the change occurred *after* the suit was filed, the request for declaratory and injunctive relief would still be moot.'"  *Hague*, 2024 WL 4116459, at *4 (emphasis in original).  Judge Jarbou found that the defendants' "vague

assertions about the timing of their conduct" left the court "guess[ing] whether standing is truly at issue[,]" noting that, "[i]f they did not change their policy and delete Hague's photograph until *after* she filed her complaint, then she has standing to seek prospective relief[,]" and that on the record in that case, the plaintiff "has standing to seek an injunction requiring Defendants to delete the offending photograph." *Id.* (emphasis in original). Judge Jarbou went on to conclude that, while defendants "suggest[ed] that their conduct may have mooted Hague's requests for declaratory or injunctive relief, [] that is a separate question that they do not advance in their motion." *Id.* at *5.

The instant case is different from *Hague* in that there is no dispute that the MDOC adopted the 2021 Policy more than two years before Abcumby commenced this action. Thus, as an initial matter, it is appropriate for the Court to examine the issue as an argument about her "standing" to seek declaratory and injunctive relief. "A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Fishon v. Mars Petcare US, Inc.*, 501 F. Supp. 3d 555, 562 (M.D. Tenn. 2020). "Fed. R. Civ. P. 12(b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d. 752, 759 (6th Cir. 2014). "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Id.* Here, Defendants clearly raise a factual attack, which means the "court has broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect

10

of that evidence on the court's authority to hear the case." *Id.* at 759-60.  "Plaintiff bears the burden of establishing that subject matter jurisdiction exists." *Id.* at 760.

Abcumby indicated in her supplemental brief that she became incarcerated – and was subjected to the 2011 Policy of which she now complains – in May of 2018.  (ECF No. 32, PageID.217).  However, as set forth above, Defendants argue that since November 29, 2021, when the 2021 Policy became effective, Abcumby has been able to wear her hijab in her booking photograph that is viewable by the public and in her prison identification photo which male prison guards can see.[3]  (ECF No. 29-1).  Additionally, to the extent a new or updated photograph is required, under the 2021 Policy, Abcumby can request to be photographed by a female officer in a private area.  (*Id.*).  The MDOC would then take a confidential photograph of Abcumby without her hijab that can be viewed only by designated staff and is exempt from the FOIA.  (*Id.*).  Defendants maintain, then, that well before Abcumby filed her complaint in this case, "[t]he change to [the 2011 Policy] secure[d] all the relief that Abcumby seeks in her complaint regarding declaratory and injunctive relief."  (ECF No. 16, PageID.88).  With one exception, the Court agrees.

First, although the 2021 Policy was not attached to Abcumby's complaint, the Court finds it appropriate to consider the document.  *See Cartwright*, 751 F.3d. at 759-60.  Defendants also failed to attach a copy of that Policy to their motion to dismiss, but they attached it to their reply brief (ECF No. 29-1); it is a public document; and Abcumby did

---

[3] Indeed, in the photograph currently available on the MDOC's website, Abcumby is wearing a head covering.  *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=462754 (last accessed July 11, 2025).

not challenge it either at oral argument or in the supplemental brief she filed thereafter. The 2021 Policy makes clear that with respect to Abcumby's concerns about having to take photographs without her hijab in front of men, or having such photographs displayed either publicly or to guards on her identification card, there was no "case or controversy" about *those particular matters* when Abcumby filed her complaint in this case in May 2024.[4]

However, there is one aspect of Abcumby's claim for prospective injunctive relief that compels a different outcome at this stage of the case. Throughout her complaint, Abcumby asserts that photographs of her taken without her hijab pursuant to the 2011 Policy are still available for public viewing. For example, she alleges that "the subject photograph was placed on a public website accessible to male and female members of the general public." (ECF No. 1, PageID.2). She also alleges that "[p]risoner photographs are integrated into other law enforcement databases[,]" and that "[d]ue to this practice, the

---

[4] Abcumby asserts that "[s]ufficient evidence exists to establish that Plaintiff (and others) may reasonably be expected to be subjected to the same denial of rights when it comes to the practice of covering their head according to their religion." (ECF No. 28, PageID.179). In reality, Abcumby presented no "evidence" that she or any current or future MDOC inmate has been or may be denied the protections afforded by the 2021 Policy with respect to her hijab. The most she could muster is an assertion that she was "subjected to mistreatment regarding her hijab" after the change in policy, which purportedly "portends similar violations" of her rights with respect to the 2021 Policy in the future. (ECF No. 28, PageID.177). Specifically, Abcumby asserts that, on September 29, 2023, a WHV corrections officer confiscated her hijab as "excessive property"; that this confiscation was witnessed by a fellow inmate; and that it affected her mentally and emotionally. (*Id.*, PageID.177-78). Abcumby argues, then, that while the underlying photograph policy may have changed, Defendants "have not properly conveyed the underlying policy of the change – to honor the constitutionally-protected religious practices of inmates – to their staff." (*Id.*, PageID.178). This argument lacks merit because even if Abcumby's factual assertions are true, they have nothing to do with the MDOC's adherence to its 2021 Policy regarding inmate photographs, and nothing to do with any of the individual defendants she sued. In short, the mere fact that an unnamed corrections officer confiscated Abcumby's hijab after the 2021 Policy was adopted does not allow a reasonable inference that *future violations of the new photograph policy* are likely to occur.

integration increases the likelihood that images of prisoners without their religious head coverings will be viewed by many people long after the prisoner photograph is taken." (*Id.*, PageID.7-8). She also alleges, "the existence of [her] booking photograph and the fact that it can be viewed again and again by men who are not members of her immediate family is haunting." (*Id.*, PageID.15). Finally, in her response brief, Abcumby asserts, "prisoner photographs are integrated into other law enforcement databases, such as [MDOC's] OTIS. Due to this practice, the integration increases the likelihood that images of prisoners [] without their religious head coverings will be viewed by many people long after the prisoner photograph is taken." (ECF No. 28, PageID.179). Because these are allegations about Abcumby's photograph being displayed or available for viewing at the time she filed her complaint, it at least appears that she had "standing" at that time to seek injunctive relief with respect to this narrow issue. And, while the Court recognizes that in Abcumby's current MDOC photograph – publicly available on OTIS – she is wearing her hijab, *see supra* at 11 n. 3, the record is not sufficiently developed for the Court to definitively conclude that the issue is "moot."[5]

---

[5] This issue presents a "close call," as some aspects of Abcumby's presentation are quite troubling. First, it appears Abcumby lifted her factual allegations about the offending photographs' retention and availability verbatim from the complaint in the *Chaaban* case, *see infra* at 18, which as noted below, is one of the cases the Court found based on its own research, but which Abcumby should have cited. Second, with respect to the complaint's vague references to "databases" that allegedly contain the offending photographs, Abcumby's counsel was unable to identify any such database at oral argument. And, despite being offered the opportunity to do so, Abcumby failed to address the issue in her post-hearing supplemental brief. At the same time, although Defendants' counsel represented at the hearing that the MDOC's only publicly available database is the aforementioned OTIS website – which displays Abcumby's photograph with her hijab on – that representation by counsel at oral argument is not "evidence." Moreover, assuming that representation is accurate, Defendants should be able to prove it up with only the slightest bit of discovery, and therefore the slightest bit of time and expense.

13

The Sixth Circuit has explained that "a case is considered moot by the defendant's voluntary cessation of the conduct at issue where the defendant can show: (1) 'there is no reasonable expectation that the alleged violation will recur'; and (2) 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Thomas v. City of Memphis*, 996 F.3d 318, 323 (6th Cir. 2021) (citing *Speech First v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019)).  Here, Defendants argue that they satisfy both prongs because the 2021 Policy has been in place for more than three years without change, and there is no danger that the old policy will be revived.  But, while they may have shown that to be true as to the policies about taking and displaying *new photographs*, *see supra* at 11-12, that does not address Abcumby's claim that *allegedly offending photographs* remain publicly accessible.  Indeed, Defendants put forth no evidence as to how the allegedly offending photographs were (or were not) made publicly available or made available on "law enforcement databases," some of which the MDOC may control directly or indirectly, or have the obligation or ability to update with different or more recent photographs.  (ECF No. 1, PageID.7; ECF No. 28, PageID.179).  Abcumby is entitled to conduct discovery on that discrete issue because, if offending photographs do remain accessible, either to the public or on a database that the MDOC controls, the adoption of the 2021 Policy arguably would not have "completely and irrevocably eradicated the effects of the alleged violation," and her request for prospective injunctive relief with respect to the prior offending photographs would not be moot.

In summary, Abcumby lacks standing to pursue any claim for declaratory and injunctive relief as to the 2021 Policy, as it pertains to taking and displaying new

14

identification photographs.  Thus, Defendants' motion should be granted as to such claims for relief, whether brought under RLUIPA or the First Amendment.  However, Abcumby has standing to assert a claim for prospective injunctive relief as to her allegations that prior offending photographs remain accessible to the public or in MDOC-affiliated databases, and that claim is not moot.  Thus, as to that narrow aspect of Abcumby's claims for prospective injunctive relief under RLUIPA and the First Amendment, Defendants' motion to dismiss should be denied.

### 4. *First Amendment Free Exercise Claim*

Defendants argue that Abcumby's First Amendment free exercise claim against Washington and Howard should be dismissed because they are entitled to qualified immunity.[6]  (ECF No. 16, PageID.90-98).  Specifically, Defendants argue that it was not clearly established – either at the time of the alleged violation (in May 2018) or now – that prison policies that (a) require all inmates to remove religious headwear to take a photograph, (b) require inmates to wear an identification card displaying that photograph while in custody, or (c) make that photograph publicly available on OTIS, violate an

---

[6] Defendants also argue that Abcumby's claims against Washington and Howard should be dismissed because she fails to allege sufficient personal involvement in the actions at issue on their part. (ECF No. 16, PageID.99-102).  It is true that, in order to demonstrate liability under § 1983 as to any particular defendant, a plaintiff must make a clear showing that each defendant was personally involved in the activity that forms the basis of the complaint. *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Here, however, Abcumby alleges in her complaint that Washington was "primarily responsible for the adoption, implementation and enforcement of MDOC's policies throughout all MDOC facilities including [WHV]" and, similarly, that Howard was responsible for "the adoption, implementation and enforcement of MDOC's policies at [WHV]."  (ECF No. 1, PageID.7).  At this stage of the proceedings, the Court finds Abcumby's allegations – while factually thin – sufficient to allege the personal involvement of Washington and Howard in the implementation and enforcement of the photograph policy at issue.

inmate's First Amendment rights.  (*Id.*).  For the reasons set forth below, the Court finds that dismissal of Abcumby's First Amendment claim on qualified immunity grounds at this stage of the proceedings is not appropriate.

a.   The Doctrine of Qualified Immunity

Qualified immunity shields public officials "'from undue interference with their duties and from potentially disabling threats of liability.'"  *Guertin v. State of Mich.*, 912 F.3d 907, 916 (6th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982)). It "'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions,' 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

Once raised, it is the plaintiff's burden to show that the defendants are not entitled to qualified immunity.  *See Kerchen v. Univ. of Mich.*, 100 F.4th 751, 763 (6th Cir. 2024). At the motion to dismiss stage, a plaintiff "must plausibly allege facts showing '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established."  *Id.* (quoting *al-Kidd*, 563 U.S. at 735).  These prongs need not be considered sequentially.  *See Venema v. West*, 133 F.4th 625, 632 (6th Cir. 2025).  If either prong is not met, the government officer is entitled to qualified immunity.  *See Doe v. Miami Univ.*, 882 F.3d 579, 604 (6th Cir. 2018).

In *Venema*, the Sixth Circuit recently admonished district courts against prematurely granting qualified immunity to government officials, particularly where the key issue is whether the asserted right was "clearly established" at the time in question:

As we have repeatedly cautioned, it is generally inappropriate for a

16

> district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity. It is preferable to resolve the "threshold question" of a government officer's entitlement to qualified immunity at summary judgment[,] … not dismissal under Rule 12. We are particularly cautious when considering the clearly established prong in reviewing Rule 12(b)(6) motions on qualified immunity grounds, because development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law.

*Venema*, 133 F.4th at 632 (internal quotation marks and citations omitted); *see also Cooperrider v. Woods*, 127 F.4th 1019, 1036 (6th Cir. 2025) ("this Court generally denies qualified immunity at the motion to dismiss stage in order for the case to proceed to discovery, so long as the plaintiff states a plausible claim for relief") (internal quotation marks omitted).[7]  Applying these legal principles, the Court finds that Abcumby's First Amendment claim should not be dismissed on qualified immunity grounds at this stage of the case.

### b.   *Violation of a Constitutional Right*

As set forth above, Abcumby alleges that her Muslim faith requires the wearing of a hijab when she is in the presence of men who are not part of her immediate family, and that being required to remove her hijab in the presence of male staff, stand for an identification photograph without her hijab, and carry around that photograph as

---

[7] Defendants criticize Abcumby for citing "out-of-date Sixth Circuit case law regarding the timing of a qualified immunity motion[,]" arguing that there has been a "swing in the Sixth Circuit" toward considering the issue of qualified immunity "at the *earliest possible* stage of a case" – including at the motion to dismiss stage. (ECF No. 29, PageID.198, 200) (emphasis in original). While it is true that there is no absolute prohibition against granting qualified immunity at the motion to dismiss stage, as noted above, the *Venema* court's recent holding clearly states the Sixth Circuit's view that "it is *generally* inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Id.* at 632 (emphasis added).

identification violated her sincerely held religious beliefs, as did the dissemination of the photograph to male employees or members of the public.  (ECF No. 1, PageID.2).  While Defendants argue that Abcumby has failed to sufficiently allege the violation of a constitutional right, the Honorable Nancy G. Edmunds of this district recently recognized that allegations virtually identical to Abcumby's plausibly alleged a violation of her First Amendment right to freely practice her religion.  *See Chaaban v. City of Detroit*, No. 20-12709, 2021 WL 4060986, at *6 (E.D. Mich. Sept. 7, 2021).[8]  While discovery might later support Defendants' contentions that no constitutional right was violated, the Court concurs with the *Chaaban* reasoning on this issue and finds that, at the motion to dismiss stage, Abcumby's allegations sufficiently allege a violation of her First Amendment right

---

[8] In their motion to dismiss, Defendants acknowledge that prisoners retain the First Amendment right to exercise their religious beliefs, but they argue that this right may be impinged upon by a policy or rule that is reasonably related to legitimate penological interests.  (ECF No. 16, PageID.91).  Defendants assert that the 2011 Policy was rationally related the MDOC's legitimate penological interests in maintaining prison security and protecting the public.  (*Id.*, PageID.91-95).  There are a number of problems with Defendants' argument.  First, at the motion to dismiss stage, the Court may not consider facts or evidence not found in the plaintiff's complaint, *Brown*, 136 F.4th at 341, and nothing in Abcumby's complaint speaks to any penological interests of the challenged policies.  Second, Defendants' "legitimate penological interests" argument is supported by nothing other than their own say-so.  (*Id.*).  While this likely owes to the Court's limited review at this stage of the case, it also highlights the impropriety of granting Defendants' motion based on that argument.  Finally, and relatedly, while Defendants cite several cases which they claim uphold "limitations and even prohibitions on religious clothing and headgear" as reasonably related to such interests (ECF No. 16, PageID.93-94), none of those cases resolved this issue at the motion to dismiss stage.  Indeed, in most, if not all, of those cases, admissible evidence – such as deposition testimony or affidavits – was produced to support the stated penological justifications for the restrictions at issue.  *See, e.g., Abdullah v. Kinnison*, 769 F.2d 345, 349-50 (6th Cir. 1985) (affidavit justified reasons for ban on white prayer robes); *Butler-Bey v. Frey*, 811 F.2d 449, 451 (8th Cir. 1987) (affirming prohibition on religious headgear after a bench trial where prison officials testified that smuggling in contraband was a problem and headgear could be used for that purpose); *Zargary v. City of New York*, 607 F. Supp. 2d 609, 611-13 (S.D.N.Y. 2009) (upholding prison policy requiring removal of religious headgear for photograph after trial testimony that policy was in place to allow for identification of employee in the event of an escape).

to freely practice her religion.

### c.      The "Clearly Established" Inquiry

Turning to the "clearly established" prong, the United States Supreme Court has

explained:

> To be clearly established, a legal principle must have a sufficiently
> clear foundation in then-existing precedent.  The rule must be settled
> law, which means it is dictated by controlling authority or a robust
> consensus of cases of persuasive authority[.]  It is not enough that the
> rule is suggested by then-existing precedent.  The precedent must be
> clear enough that every reasonable official would interpret it to
> establish the particular rule the plaintiff seeks to apply.  Otherwise,
> the rule is not one that every reasonable official would know.

*District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal citations and quotation

marks omitted).  The *Wesby* Court further explained:

> The "clearly established" standard also requires that the legal
> principle clearly prohibit the officer's conduct in the particular
> circumstances before him.  The rule's contours must be so well
> defined that it is clear to a reasonable officer that his conduct was
> unlawful in the situation he confronted.  This requires a high degree
> of specificity.

It is not necessary, however, for there to be "a case directly on point …."  *al-Kidd*,

563 U.S. at 741.  Indeed, "the Sixth Circuit has warned that defining the right too narrowly

would 'defeat[ ] the purpose of § 1983 ....'"  *Pettway v. Michigan State Police*, No. 21-

12716, 2025 WL 877532, at *6 (E.D. Mich. Mar. 20, 2025) (quoting *Hagans v. Franklin

Cty. Sheriff's Office*, 695 F.3d 505, 509 (6th Cir. 2012)).  Thus, "'[t]he mere fact that a

court has not held *the particular action in question* unlawful is insufficient to create

immunity.'"  *Griffith v. Coburn*, 473 F.3d 650, 659 (6th Cir. 2007) (emphasis added).

And, just as it is improper to define the right in question as coterminous with the

19

facts of the particular case before the court, the Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.  A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that [the rule] was firmly established." *Wesby*, 583 U.S. at 63-64 (internal citations and quotation marks omitted).

When addressing the clearly established standard, Abcumby's burden includes "pointing to legal authority that clearly shows that the constitutional [or statutory] question ... should be resolved in [her] favor." *Linden v. City of Southfield*, 75 F.4th 597, 604 (6th Cir. 2023).  Abcumby "cannot point to unpublished decisions to meet this burden" nor can out-of-circuit case law constitute clearly established precedent.  *Bell v. City of Southfield*, 37 F.4th 362, 367-68 (6th Cir. 2022).  Indeed, the Sixth Circuit has a "general rule against using out-of-circuit caselaw in the 'clearly established' inquiry."  *Burnett v. Griffith*, 33 F.4th 907, 913 (6th Cir. 2022) (citing *Ashford v. Raby*, 951 F.3d 798, 804 (6th Cir. 2020)).  Abcumby also must show that the right at issue was clearly established as of the date of the alleged misconduct – *i.e.*, prior to November 29, 2021, the effective date of the 2021 Policy.  *See Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011).

Here, Abcumby argues that prior to November 28, 2021, she had "a 'clearly established' constitutional right a) not to be required to remove her hijab for her prison booking photograph, and/or b) not to have her image, without her hijab on, posted or promulgated on databases where males not in her immediate family would have access and be able to see her, in violation of her sincerely-held religious beliefs." (ECF No. 32,

20

PageID.211).  Defendants take the exact opposite view and argue that Abcumby "cites no case law showing that it was clearly established in the Sixth Circuit that removing a Muslim prisoner's hijab prior to taking a security photograph violated the First Amendment." (ECF No. 33, PageID.229).   Neither side's definition of the right in question is appropriate; Abcumby defines the right in question too narrowly, as being coterminous with the facts of this case, *al-Kidd*, 563 U.S. at 741; *Pettway*, 2025 WL 877532, at *6, while Defendants err in asserting that Abcumby was required to identify case law showing that the exact conduct about which she complains was previously found to violate the First Amendment, *Griffith*, 473 F.3d at 659.

Abcumby's supplemental brief gets a little closer to a proper definition of the clearly established right in question – or at least a proper framework to identify that right – by asserting that "the First Amendment itself, bolstered by widespread recognition and understanding, in our country, of the meaning and importance of a hijab to a Muslim woman, suffices to 'clearly establish' Plaintiff's constitutional right …." (ECF No. 32, PageID.211).  The Sixth Circuit has held that "[a]n action's unlawfulness may be plain 'from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs.'" *Martin v. City of Broadview Hts.*, 712 F.3d 951, 961 (6th Cir. 2013) (quoting *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902 (6th Cir. 2004)).  Abcumby went on to cite *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), which explained the necessity, in cases such as this one, of balancing the principle that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison … [and] clearly retain protections afforded by the First Amendment,

21

[] including its directive that no law shall prohibit the free exercise of religion[,]" with the principle that "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* at 348 (internal quotation marks and citations omitted).

The above caselaw supports a finding that Abcumby asserts a clearly established right. Abcumby's complaint specifically details the significance of the hijab to her Muslim religion; provides numerous instances in which "Federal, State, and Local Governments [from] Across the United States Recognize the Religious Interest in the Hijab and Permit it to be Worn in Official Photographs" (including in some state prisons); alleges that she repeatedly "made her dissent and protest to the forceful removal of her hijab extremely clear"; and "asserted her right to keep her hijab on for the photograph because it is representative of a sincerely-held religious belief, as a Muslim-woman," but that she was nevertheless required to remove her hijab in the presence of men, and the photograph of her without her hijab was disseminated to the public such that it could be viewed by men. (ECF No. 1). Considering that the proposed "clearly established right" must be defined "in light of the specific context of the case, not as a broad general proposition," *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (internal quotation marks omitted), the Court finds that the clearly established right pled by Abcumby is an inmate's right to freely practice a central tenet of her religious faith known to the defendant, absent a legitimate penological interest in preventing that practice. Indeed, as the Honorable Victoria A. Roberts explained, "courts confronting free exercise claims have inquired whether a reasonable officer ***would have known that a particular action or deprivation would***

*interfere* with a plaintiff's religious practices[,]" and that "it is well-established that prison officials violate a prisoner's free exercise of rights when they needlessly and intentionally prevent him from performing ***religious acts of central significance to his faith*** …." *Uduko v. Cozzens*, 975 F. Supp. 2d 750, 777-78 (E.D. Mich. 2013) (emphasis added); *see also Pleasant-Bey v. Shelby Cty. Gov't*, No. 2:17-cv-02502-TLP-tmp, 2019 WL 5654993, at *4 (W.D. Tenn. Oct. 31, 2019) ("At this stage of the proceeding, the Court must accept Plaintiff's allegations as true.  In doing so, Plaintiff has stated a claim for violating his First Amendment right to the free exercise of his religion absent a legitimate penological interest in preventing him from wearing his kufi.") (internal citation omitted); *Byrd v. Haas*, No. 17-11427, 2020 WL 6877754, at *8 (E.D. Mich. May 29, 2020) ("At the time of Haas' improper handling of plaintiff's requests, it was clearly established that plaintiff had the right to the free exercise of his religion unless that exercise posed a security or custody threat.") (citing *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985) and *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001), *report and recommendation adopted in part, overruled in part*, 2020 WL 6867623 (E.D. Mich. Nov. 23, 2020), *reversed and remanded on other grounds*, 17 F.4th 692 (6th Cir. 2021)).

A number of recent Eastern District of Michigan cases support the Court's conclusion.  Abcumby relies on *Chaaban*, a case first identified by this Court at oral argument, but one after which Abcumby admittedly "modeled her complaint" and discussed extensively in her supplemental brief.  (ECF No. 32, PageID.212-15).  In *Chaaban*, the Honorable Nancy G. Edmunds analyzed a virtually identical claim related to the wearing/removal of a hijab for prison photographs.  In denying the defendants' motion

23

to dismiss on qualified immunity grounds, Judge Edmunds explained:

> The First Amendment forbids all laws "prohibiting the free exercise" of religion.  Even in a prison setting, established law forbids regulations that would arbitrarily and capriciously impinge on an inmate's constitutional rights.  The Supreme Court established in *Turner [v. Safley*, 482 U.S. 78 (1987)] that when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.
>
> Plaintiff's allegations are sufficient to show the MDOC Defendants were "on notice" that their policy violates a Muslim woman's right to freely exercise her religion.  Plaintiff alleges she "made her dissent and protest to the forceful removal of her hijab extremely clear" and "asserted her right to keep her hijab on for the photograph because it is representative of a sincerely-held religious belief, as a Muslim-woman."  Moreover, it defies logic that officers operating in a facility in Detroit, near one of the nation's largest Muslim communities, would not be aware of the religious significance of the hijab.
>
> At this stage in the proceeding, [t]he MDOC Defendants have not established a "legitimate penological interest" for the conduct alleged.  Accordingly, Plaintiff states a claim for relief and Defendants [] are not immune from suit based upon qualified immunity.

*Id.* at *6-7 (internal quotation marks and citations omitted).  Although the *Chaaban* case did not cite all of the above authorities, it certainly squares with them, and the Court sees no reason to reach a different conclusion here.

Another on-point Eastern District of Michigan case is *Catlett v. Washington*, No. 20-13283, 2021 WL 4593945, at *6 (E.D. Mich. Oct. 6, 2021).  In that case, the court considered another virtually identical challenge to the MDOC's prisoner photograph policy, denying the defendant's argument that she was entitled to qualified immunity on the plaintiffs' Free Exercise claim.  The *Catlett* court relied on *Turner*, which "clearly establishes that a prison regulation cannot 'impinge[] on inmates' constitutional rights'

24

unless such impingement 'is reasonably related to legitimate penological interests.'"  *Id.* (quoting *Turner*, 482 U.S. at 89).  *Catlett* specifically held that plaintiffs "did not need a case any more 'on point' than [*Turner*]" because it was sufficient to give state officials fair warning that their alleged treatment of the plaintiffs was unconstitutional.  *Id.*  The court then very explicitly stated that, in denying qualified immunity, it was relying "on the following, clearly established rule, which comes from *Turner*: absent a legitimate penological interest prison officials may not infringe on sincerely held religious beliefs."  *Id.* (internal quotation marks omitted).[9]

In her supplemental brief, Abcumby also seeks to distinguish *Hague*, another case first identified by the Court at oral argument on Defendants' motion.  In *Hague*, the plaintiff also challenged a prison policy requiring the removal of religious head coverings for booking photographs.  There, the court rejected the plaintiff's argument that, at the time of the events in question (April 2023), it was clearly established that the photograph policy at issue was unlawful.  In reaching this conclusion, the court reasoned:

> Hague argues that Defendant would have known that Hague had a constitutional right to wear her hijab.  Even so, that does not mean Defendant would have known that requiring Hague to temporarily remove the hijab in order to take a booking photo would violate her

---

[9] Again, the Court notes that Defendants argue that the 2011 Policy was rationally related the MDOC's legitimate penological interests in maintaining prison security and protecting the public. (ECF No. 16, PageID.91-95).  The Court also recognizes that Abcumby might not have specifically and particularly pled the absence of a legitimate penological interest behind that Policy in her complaint.  However, she did allege the existence of a "growing national consensus that there is no basis to require the removal of religious head coverings for official government photographs" and that the 2011 Policy did not "further a compelling government interest."  (ECF No. 1, PageID.12, 15).  As explained above, *supra* at 18, n. 8, discovery is necessary in order to determine whether the policy at issue was in fact reasonably related to a legitimate penological interest.  At the motion to dismiss stage, however, Abcumby's allegations are sufficient.

> rights under the First Amendment.  Hague's First Amendment rights are not absolute.  In some circumstances, they must give way to legitimate penological interests.  It was not clearly established that Defendants' policy violated those rights.

*Id.* at *9.  While the Court recognizes the factual similarities between this case and *Hague*, it does not compel any particular outcome here because "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."  *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (internal quotation marks omitted).  Moreover, as noted above, the present record in this case does not permit the Court to evaluate the strength of Defendants' "legitimate penological interests" argument, and discovery on that issue is warranted.

In sum, the Court finds that Abcumby's First Amendment claim should not be dismissed on qualified immunity grounds at the motion to dismiss stage.  Dismissals at such a stage are generally disfavored, and Abcumby has plausibly alleged facts establishing the violation of a constitutional right and the fact that such a right was clearly established at the time of the events in question.  Moreover, issues such as the prison's legitimate penological interests are far better suited for resolution after discovery and summary judgment motion practice.  Thus, Defendants' request to dismiss Abcumby's First Amendment claim on the basis of qualified immunity should be denied.

### 5.    *Abcumby's Claim Under the Michigan Constitution*

Finally, Abcumby pleads a claim against the MDOC for violation of the Michigan Constitution.  Specifically, Abcumby alleges that "Defendant MDOC's [2011] [P]olicy requiring arrestees who wear religious head coverings remove those head coverings to be

photographed violates Article 1, Section 4 [of the Michigan Constitution] by disallowing the free exercise of religion."[10]  (ECF No. 1, PageID.19).  As with Abcumby's other claims against the MDOC, however, this claim, too, is barred by Eleventh Amendment immunity, a fact that Abcumby concedes.  (ECF No. 28, PageID.176).  *See Prince v. State of Michigan*, No. 23-12226, 2025 WL 322220, at *2 (E.D. Mich. Jan. 28, 2025) ("The State's 'sovereign immunity, guaranteed by the Eleventh Amendment of the United States Constitution, precludes plaintiffs from suing the state in federal court to remedy a violation of … the Michigan Constitution.'") (quoting *Bauserman v. Unemployment Ins. Agency*, 509 Mich. 673, 710 (2022)).  Thus, Abcumby's claim against the MDOC under the Michigan Constitution should be dismissed.

## III.  CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion to Dismiss **(ECF No. 16)** be **GRANTED IN PART** and **DENIED IN PART**.  Specifically, Defendants' motion should be **GRANTED** as to (1) all of Abcumby's claims against Defendants Tellas and Adamson; (2) Abcumby's RLUIPA claim for money damages; and (3) Abcumby's claim under the Michigan Constitution.  Defendants' motion should be

---

[10] In her response to Defendants' motion, Abcumby argues that she pled this claim against "all Defendants[.]"  (ECF No. 28, PageID.176).  In Count III of her complaint, however, captioned "Michigan State Constitution," Abcumby specifically alleges that she is challenging "***Defendant MDOC's*** [2011] [P]olicy[,]" and that as "a direct and proximate result of ***Defendant MDOC's*** unlawful conduct, [she] has sustained damages …."  (ECF No. 1, PageID.19) (emphasis added).  Contrast this with Abcumby's allegation in Count II that as "a direct and proximate result of ***all named Defendants[']*** violation of the First Amendment, she sustained damages.  (*Id.*, PageID.18) (emphasis added).  Thus, the Court will not infer the pleading of Abcumby's Michigan Constitutional claim against any defendant other than that specifically identified – namely, the MDOC.

**DENIED** as to all aspects of Abcumby's First Amendment claim against Defendants Washington and Howard, as well as Abcumby's claim for prospective injunctive relief as to prior allegedly offending photographs of her against Defendants Washington, Howard, and the MDOC under both RLUIPA and the First Amendment.

Dated: July 11, 2025                              s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                                          United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue

28

presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 11, 2025.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
